IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

C.A. NO. 05-10835

UNITED STATES OF AMERICA,                )    CR. NO. 03-00560 SOM
                                         )    (USDC-Hawaii)
        Plaintiff-Appellee,              )
                                         )
   vs.                                   )
                                         )
ROBERT LUM,                              )
                                         )
        Defendant-Appellant.            )
                                         )
_____  )

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

<u>BRIEF OF APPELLEE</u>

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

LOUIS A. BRACCO
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850

Attorneys for Plaintiff-
  Appellee
UNITED STATES OF AMERICA


EXHIBIT "A"

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . i-ii

I.     ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF THE CASE . . . . . . . . . . . . . . . . 1

       A.   Jurisdiction and Proceedings Below . . . . . . 1

       B.   Timeliness . . . . . . . . . . . . . . . . . . 2

       C.   Bail Status . . . . . . . . . . . . . . . . . . 2

III.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . 2

       A.   Offense Conduct Overview . . . . . . . . . . . 2

       B.   Representation and Court Proceedings . . . . . 3

            1.   Representation by Clayton Kimoto . . . . . 3

            2.   Representation by Emmett Lee Loy . . . . . 4

            3.   Representation by Cynthia Kagiwada . . . . 5

            4.   The Hearing Before Judge Mollway . . . . . 5

            5.   Judge Mollway's Ruling . . . . . . . . . . 8

IV.    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . 8

V.     STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . 9

VI.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 9

       A.   Judge Mollway Properly Exercised Her Discretion
            in Denying Lum's Motion to Withdraw His Guilty
            Plea . . . . . . . . . . . . . . . . . . . . . 9

            1.   Overview . . . . . . . . . . . . . . . . . 9

            2.   Statement of Law Re:  Finality of Guilty Pleas. 10

            3.   Analysis of the Hearing Evidence . . . . . 11

            4.   Judge Mollway's Credibility and Factual
                 Findings . . . . . . . . . . . . . . . . . 14

5.    Judge Mollway Appropriately Employed the
      "Fair and Just Reason" Standard . . . . . . .  16

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . .  19

## TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

Brady v. United States, 397 U.S. 742 (1970) ................. 10

Clemmons v. United States, 721 F.2d 235 (8th Cir. 1983) ...... 11

Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971) .............. 10

McMann v. Richardson, 397 U.S. 759 (1970) ................... 10

Parker v. North Carolina, 397 U.S. 790 (1970) .............. 10

United States v. Carr, 740 F.2d 339 (5th Cir. 1984),
    cert. denied, 471 U.S. 1004 (1985) ..................... 11

United States v. Castello, 724 F.2d 813 (9th Cir.),
    cert. denied, 467 U.S. 1254 (1984) .................... 11

United States v. Cook, 487 F.2d 963 (9th Cir. 1973) ......... 11

United States v. Davis, 428 F.3d 802 (9th Cir. 2005) ........ 17

United States v. Hyde, 520 U.S. 670 (1997) ................. 10

United States v. Johnson, 760 F.2d 1025 (9th Cir. 1985) ... 9, 11

United States v. Kay, 537 F.2d 1077 (9th Cir. 1976) .......... 11

United States v. King, 618 F.2d 550 (9th Cir. 1980) ......... 11

United States v. Navarro-Flores, 628 F.2d 1178 (9th Cir. 1980) 11

United States v. Nostratis, 321 F.3d 1206 (9th Cir. 2003) . 9, 17

United States v. Read, 778 F.2d 1437 (9th Cir. 1985),
    cert. denied, 479 U.S. 835 (1986) ................... 9, 11

United States v. Rios-Ortiz, 830 F.2d 1067 (9th Cir. 1987) 11, 17

United States v. Rubalcaba, 811 F.2d 491 (9th Cir.),
    cert. denied, 484 U.S. 832 (1987) ..................... 18

United States v. Signori, 844 F.2d 635 (9th Cir. 1988) ....... 18

Cases - Continued                                                    Page(s)

United States v. Vasquez-Velasco, 471 F.2d 294 (9th Cir.),
      cert. denied, 411 U.S. 970 (1973) ...................... 11


Statutes and Rules

21 U.S.C. § 841(a)(1) ...................................... 1

21 U.S.C. § 846 ........................................... 1

21 U.S.C. § 851 ........................................... 2

F. R. Crim. P. Rule 11(d)(2)(B) ........................... 10

I.    ISSUE PRESENTED

A.    Whether the district court abused its discretion in denying Lum's motion to withdraw his guilty plea.

II.    STATEMENT OF THE CASE

A.    Jurisdiction and Proceedings Below

On December 3, 2003, a single-count Indictment was returned in the District of Hawaii charging Appellant Robert Lum ("Lum"), and eleven other individuals, with participating in a methamphetamine trafficking conspiracy in violation of 21 U.S.C. §§ 846 and 841(a)(1).

On November 18, 2004, Lum pled guilty to the Indictment pursuant to a written plea/cooperation agreement before Hawaii federal Magistrate Judge Barry Kurren.  Lum's sentencing proceedings were thereafter continued to give Lum the opportunity to provide information to law enforcement which was contemplated by the cooperation provision(s) of his plea agreement.

Ultimately, after Lum had provided authorities with information at several debriefing sessions, sentencing proceedings were scheduled for November 2005.  On September 28, 2005, after being advised that his debriefing information was not sufficient to warrant a "substantial assistance" departure motion, Lum moved to withdraw his guilty plea.

On November 3, 2005, an evidentiary hearing was held before Hawaii District Judge Susan Oki Mollway, as to Lum's

motion to withdraw his guilty plea.  After hearing testimony from
Defendant Lum and his two prior attorneys, Judge Mollway denied
Lum's motion to withdraw his guilty plea.

Sentencing proceedings were held before Judge Mollway
on November 28, 2005.  Because the sentencing record established
that Lum had previously been convicted of a drug trafficking
felony as noticed in a Special Information filed pursuant to 21
U.S.C. § 851, Judge Mollway imposed the statutorily required
20-year mandatory minimum prison term.

B.    Timeliness

Lum has timely appealed his conviction and sentence by
Notice of Appeal filed December 12, 2005.

C.    Bail Status

Lum is presently incarcerated in a federal correctional
facility serving his prison sentence.[1]


III.    STATEMENT OF FACTS

A.    Offense Conduct Overview

Robert Lum was one of 12 defendants who conspired with
named Co-conspirator Donald Morton to obtain and distribute
quantities of methamphetamine on the North Shore and Windward
areas of Oahu.  Lum's role in this conspiracy was a sub-

---

[1]    It appears that Lum may currently be in custody of the
State of Hawaii (pursuant a state writ) as a result of pending
State cases.

distributor; Lum re-distributed methamphetamine which was
provided to him by Donald Morton, to his own customers (AER 134-
135).[2]

Subsequent to initially appearing in federal court on
his Indictment, a Special Information was filed (on April 7,
2004) against Lum which noticed Lum's 1998 State of Hawaii
convictions for multiple felony drug trafficking offenses (AER
10-15). Accordingly, pursuant to statute, Lum faced enhanced
penalties, which included a statutory mandatory minimum 20-year
term of imprisonment, upon conviction of the newly charged
federal offense.

B.    Representation and Court Proceedings

1.    Representation by Clayton Kimoto

Lum was initially represented by CJA Counsel Clayton
Kimoto (AER 308-309). While represented by Mr. Kimoto, Lum
sought to obtain a written guarantee in his plea agreement that
the government would move for a downward sentencing departure in
his case. Ultimately, Lum became disenchanted with Mr. Kimoto's
representation, after Mr. Kimoto advised Lum that he was unable
to secure such a written "guarantee" from the prosecutor.

Accordingly, in October 2004, at Lum's request,
Mr. Kimoto filed a motion to withdraw as counsel. This motion

---

[2]    "AER" refers to Appellant Lum's Excerpts of Record on
appeal.

was granted by the court and new counsel, Emmet Lee Loy, Esq.,
was assigned as substitute CJA counsel for Lum (AER 328).

        2.    Representation by Emmett Lee Loy

        Mr. Lee Loy represented Lum from October 2004 until
mid-May 2005 (AER 347).  While represented by Mr. Lee Loy, Lum
negotiated a plea agreement which provided for his cooperation
with law enforcement authorities (AER 332).  The cooperation
provisions of the plea agreement provided that Lum would provide
information to law enforcement officials, which information would
be assessed for possible "substantial assistance" credit (AER 58-
61).

        On November 18, 2004, Lum pled guilty to the Indictment
pursuant to this negotiated (written) plea/cooperation agreement
(AER 20-49, 50-61, 332).  The plea agreement was publicly filed
contemporaneous to Lum's guilty plea (AER 332).  Thereafter, Lum
provided additional debriefing information to the Honolulu FBI
(AER 185-186).

        In or about May 2005, Lum became dissatisfied with
Mr. Lee Loy upon learning that the government did not intend to
file a substantial assistance departure motion based upon his
debriefing information.  Accordingly, Mr. Lee Loy moved to
withdraw as Lum's attorney.  On May 24, 2005, the court granted
Mr. Lee Loy's motion for withdrawal, and appointed a third

4

attorney, Cynthia Kagiwada, as the second substitute CJA counsel
for Defendant Lum (AER 347).

### 3.    Representation by Cynthia Kagiwada

With Ms. Kagiwada (present appellate counsel) acting as
his attorney, on September 28, 2005, Lum filed a written motion
to withdraw the guilty plea that he entered in November 2004 (AER
68-84, 359).   In his motion to withdraw, Lum claimed that he was
wrongfully induced by his former attorney, Mr. Lee Loy, to enter
his guilty plea.   Lum claimed that Mr. Lee Loy wrongfully misled
him into believing that he would <u>automatically</u> receive a
substantial assistance departure motion from the government, if
he entered a guilty plea (AER 81-83).

### 4.    The Hearing Before Judge Mollway

On November 3, 2005, an evidentiary hearing was held
before Judge Mollway to consider Lum's motion to withdraw his
guilty plea.   At this hearing, Lum's previous two attorneys,
Clayton Kimoto and Emmett Lee Loy, as well as Lum himself, each
testified (AER 154-264, 363).

Mr. Kimoto testified that during his representation of
Lum, Lum repeatedly pressed him to obtain a "written guarantee"
in his plea agreement from the prosecutor, committing the
government to file a departure motion in his case (AER 160-161).
Mr. Kimoto explained that he made it clear to Lum on several
occasions that the prosecutor had informed him that the

government would not promise Lum a downward departure motion in exchange for a guilty plea (AER 165-168). Mr. Kimoto further explained that once it became apparent to Lum that he could not obtain a promise of a substantial assistance departure motion from the prosecutor, Lum sought to discharge him (AER 162).

Mr. Lee Loy testified that he, too, informed Lum that the prosecutor declined to make any guarantee or promise that Lum's debriefing information/guilty plea would result in a substantial assistance motion (AER 218-219). Mr. Lee Loy explained that initially, Lum continued to insist on such a "guarantee," as he had previously with Mr. Kimoto (AER 216, 240). However, Mr. Lee Loy explained that Lum ultimately relented, and agreed to enter a guilty plea without a promise of a departure motion (AER 220-221). Mr. Lee Loy unequivocally testified that he never promised Lum that he would receive a departure motion. Mr. Lee Loy explained that all of his discussions with Lum as to the possibility of a sentence of less than 20 years, were contingent on Lum's information being useful to the FBI (AER 240-241).

Mr. Lee Loy explained that, accordingly, he and Defendant Lum together appeared before Magistrate Kurren at the Rule 11 hearing, where Lum entered a guilty plea (AER 224-225). At this hearing, Lum acknowledged orally to Magistrate Kurren (as he had previously acknowledged in writing in the Memorandum of

6

Plea Agreement) that he understood that no promise of a substantial assistance motion, or sentencing departure, was being made to him in connection with his guilty plea (AER 223-227). Finally, Mr. Lee Loy explained that when Lum later learned that the prosecutor would not be filing a substantial assistance motion, Lum became upset with Mr. Lee Loy, and "fired him" (AER 228-229).

Defendant Lum testified in his own behalf. At first, Lum testified that Mr. Lee Loy merely misled him, by making generalized assurances that he would receive a downward departure from the prosecutor (AER 178-181, 184-185). Lum testified as to remarks which he attributed to Mr. Lee Loy, in which Mr. Lee Loy suggested that in other cases where defendants had provided debriefing information, departure motions had been filed 9 out of 10 times (AER 178, 186, 189, 220, 232).

Later in his testimony, under cross-examination, Lum altered his testimony. Lum testified that he had been promised a departure by Mr. Lee Loy (AER 184-185, 190, 192, 198-199, 206-207, 213), and, claimed that he had been coached by Mr. Lee Loy into falsely affirming to Magistrate Kurren at the guilty plea that no promises of a departure motion had been made to him (AER 191-192, 200-202, 205).

5.  <u>Judge Mollway's Ruling</u>

Judge Mollway found that all of the credible evidence at the hearing supported Mr. Lee Loy's testimony that Defendant Lum well <u>knew</u> that no promise of a departure existed.  Judge Mollway found Defendant Lum not to be a credible witness.  In particular, Judge Mollway found that Lum had "embellished" his story upon cross-examination to a degree which rendered his testimony not believable (AER 259-264).

Unsurprisingly, Judge Mollway found that Lum failed to meet his burden to demonstrate a fair and just reason why he should be allowed to withdraw his guilty plea.  Accordingly, Judge Mollway denied Lum's plea withdrawal motion (AER 259-264).

IV.  <u>SUMMARY OF THE ARGUMENT</u>

We argue herein that Judge Mollway's factual findings (1) that the credible evidence at the hearing supported Mr. Lee Loy's testimony, and (2) that Lum's testimony was not credible, were appropriate credibility choices made by the district court.  No basis exists for this Court to disturb Judge Mollway's credibility choice(s) on appeal.  Based on her credibility determinations, Judge Mollway correctly found that Lum did not meet his burden to demonstrate a fair and just reason why he should be permitted to withdraw his knowingly made guilty plea.

8

Consequently, Judge Mollway did not abuse her
discretion in denying Lum's motion to withdraw his guilty plea.


## V.   STANDARDS OF REVIEW

A.   A defendant has the burden of demonstrating that
the district court's refusal to permit withdrawal of his guilty
plea was erroneous.  This Court's standard for review of a
district judge's denial of a motion to withdraw a guilty plea is
abuse of discretion.  <u>United States v. Nostratis</u>, 321 F.3d 1206,
1208 (9th Cir. 2003); <u>United States v. Johnson</u>, 760 F.2d 1025,
1026 (9th Cir. 1985); <u>United States v. Read</u>, 778 F.2d 1437, 1440
(9th Cir. 1985), <u>cert. denied</u>, 479 U.S. 835 (1986).


## VI.   ARGUMENT

A.   Judge Mollway Properly Exercised Her Discretion in
<u>Denying Lum's Motion to Withdraw His Guilty Plea</u>

1.   <u>Overview</u>

Our view is that Lum's eleventh hour plea withdrawal
motion, made only after he learned that no departure motion would
be filed in his case, was simply a tactical maneuver, designed to
avoid the consequences of his guilty plea.  Lum had previously
acknowledged both in writing (in his plea agreement), as well as
orally under oath (to Magistrate Kurren at the guilty plea
hearing), that he <u>knew</u> that no promise of a departure was being
made to him in exchange for his guilty plea.

9

Accordingly, the sole remaining vehicle left available to Lum to undermine his guilty plea, was to accuse his attorney of making "outside the record" promises to him which induced him to plead guilty. So, he did.

Unfortunately for Lum, however, his prevarications were not able to survive the test of an adversarial evidentiary hearing. Lum's accusations against Mr. Lee Loy were hollow, and, simply did not ring true in the light of other evidence. Accordingly, Lum's plea withdrawal motion was appropriately rejected by Judge Mollway.

2.    Statement of Law Re:  Finality of Guilty Pleas

Guilty pleas are meant to be, and should be, final. McMann v. Richardson, 397 U.S. 759 (1970); Parker v. North Carolina, 397 U.S. 790 (1970); Brady v. United States, 397 U.S. 742 (1970); Colson v. Smith, 438 F.2d 1075, 1079 (5th Cir. 1971). When a defendant makes an informed and conscious choice to plead guilty, he should be required to live by that choice. Colson v. Smith, supra, 438 F.2d at 1079.

It is well established that a defendant has no right to withdraw his guilty plea; a motion to withdraw a guilty plea is committed to the sound discretion of the district court. The burden is on the defendant to demonstrate a "fair and just reason" why the Court should permit a withdrawal of the prior plea. F.R.Crim.P. Rule 11(d)(2)(B); United States v. Hyde, 520

10

U.S. 670 (1997); <u>United States v. Johnson</u>, 760 F.2d 1025, 1026

(9th Cir. 1985); <u>United States v. Read</u>, 778 F.2d 1437, 1440 (9th

Cir. 1985), <u>cert. denied</u>, 479 U.S. 835 (1986); <u>United States v.</u>

<u>King</u>, 618 F.2d 550, 551 (9th Cir. 1980); <u>United States v.</u>

<u>Castello</u>, 724 F.2d 813, 814 (9th Cir.), <u>cert. denied</u>, 467 U.S.

1254 (1984); <u>United States v. Cook</u>, 487 F.2d 963, 965 (9th Cir.

1973); <u>United States v. Vasquez-Velasco</u>, 471 F.2d 294 (9th Cir.),

<u>cert. denied</u>, 411 U.S. 970 (1973); <u>United States v. Navarro-</u>

<u>Flores</u>, 628 F.2d 1178, 1183 (9th Cir. 1980).

A defendant's change of mind and stated desire to

proceed to trial on his theory of defense is not a sufficient

"fair and just reason" to permit withdrawal.  <u>United States v.</u>

<u>Rios-Ortiz</u>, 830 F.2d 1067, 1069 (9th Cir. 1987).  Appellate

courts have repeatedly upheld a district court's denial of a

defendant's motion to withdraw his guilty plea where the district

court finds that the withdrawal motion is a tactical maneuver

made by the defendant to avoid the consequences of his

conviction.  <u>United States v. Kay</u>, 537 F.2d 1077, 1078 (9th Cir.

1976); <u>United States v. Carr</u>, 740 F.2d 339, 345 (5th Cir. 1984),

<u>cert. denied</u>, 471 U.S. 1004 (1985); <u>Clemmons v. United States</u>,

721 F.2d 235, 238-239 (8th Cir. 1983).

3.    <u>Analysis of the Hearing Evidence</u>

The hearing evidence shows that Lum was unequivocally

told by his two separate attorneys, Mr. Kimoto and Mr. Lee Loy,

as well as by federal Magistrate Judge Kurren, that no promise of a departure was being made to him in exchange for his guilty plea. The record shows that Lum acknowledged the absence of any such promise, under oath, before Magistrate Kurren. The precise advisement made to Lum about the possibility of a departure motion was as follows (AER 30, 119):

> THE COURT (Magistrate Kurren): On -- on the subject of cooperation. By this agreement, as I understand it, you've -- you've agreed to cooperate with the Government, provide information as requested, testimony if requested to do so. And based on any cooperation the Government may ask the Court to go lower in the sentence as to you. It may move for a downward departure.

> A couple of important points here. First, this is entirely up to the Government. They can't be forced to make that motion. They have the sole discretion to decide whether or not the information they have received, you know, serves as a basis for -- for them to -- to move for a lower sentence. They can't be forced to do that. You understand that?

> DEFENDANT LUM: Yes, sir.

> \* \* \* \* \*

LUM also acknowledged to Magistrate Kurren, <u>under oath</u>, that no promises were made to him to induce him to plea guilty, outside the terms of his plea agreement (AER 28, 60, 117).

The record also shows that the testimonies given at the plea-withdrawal hearing by Mr. Lee Loy, and Appellant Lum, were diametrically opposed. Consequently, Judge Mollway necessarily had a credibility choice to make.

12

Mr. Lee Loy testified that he <u>repeatedly</u> told Lum that no promises could or would be made to him which would guarantee that Lum would receive a substantial assistance departure motion, should he plead guilty. Mr. Lee Loy's statements to Lum were consistent with those made to Lum previously by Mr. Kimoto. No motive whatsoever is discernible from the record below why Mr. Lee Loy, as Lum's CJA attorney, would lie about this matter.

Conversely, Defendant Lum testified that Mr. Lee Loy not only wrongfully induced him to plead guilty, he expanded his claims to add that Mr. Lee Loy "promised" him a departure, and, had "coached" him to conceal this promise during the hearing before Magistrate Judge Kurren. Of course, Lum had every motive to lie about this matter, since Lum's assertions provided him with his only chance of prevailing in his plea withdrawal motion. Lum's prior felony drug trafficking conviction also negatively impacts his credibility (AER 241-242).

Beyond the impeachment information mentioned above, <u>the hearing transcript demonstrates that Lum's testimony was uncommonly evasive</u>. When confronted with a tough question or inconsistency, and asked to explain, Lum repeatedly resorted to some variation of the same catch-phrase response: "I was following my attorney's advice" (AER 183, 184, 192, 193, 196, 197, 198, 202, 203, 204, 209, 211).

For example, Lum testified on direct-examination that his single driving motive in plea negotiations was to obtain a promise of a downward departure (AER 173-174).  This promise was so important to Lum, that he "fired" Mr. Kimoto because Kimoto could not secure such a promise (AER 174).  Lum claims that, thereafter, he received this exact promise from Mr. Lee Loy (AER 184-185, 190, 192, 198-199, 206-207, 213).

Yet, when given the opportunity to confirm the existence of this promise, inexplicably, Lum did not.  At the guilty plea colloquy, Lum denied the existence of the promise (that was so important to him) to Magistrate Judge Kurren, under oath (AER 202-205, 213).  When pressed on cross-examination to explain why he would deny the existence of the departure promise which he coveted so much, Lum resorted to the "following his attorney's advice" catch-phrase, and, otherwise failed to give a responsive answer (AER 211-213).

   4.   Judge Mollway's Credibility and Factual Findings

Ultimately, the credibility determination as between Lum and Mr. Lee Loy fell within the province of Judge Mollway. Recited below are a few of the observations made by Judge Mollway about Lum's testimony, which illustrate why Judge Mollway found Lum unworthy of belief:

        THE COURT:  (AER 249-250)  ... Today what I saw
   on the stand was Mr. Lum building on the statement.  It
   seemed to me that he took what was in his declaration,
   which was a fairly narrow statement -- the one I've

14

just read -- and it <u>seemed to me he decided that this
was his chance to embellish</u>.  I mean, frankly, I think
he -- <u>the lie grew right before my very eyes</u> to where
suddenly not what was in his declaration but something
different had been said to him by Mr. Lee Loy,
according to his testimony today, <u>and I didn't believe
him</u>.

    I mean, there's no reason that Mr. Lee Loy would
suddenly come up with this -- this statement that he
had a guaranty from Mr. Bracco.  I mean, I don't know
where that came from.  And it's not in his declaration.
It's not in Mr. Lum's declaration.  <u>Watching him and
looking at his demeanor and the manner in which he
answered, I think he began to make things up right here
on the stand.  And it got more and more out there as he
got pressed</u>.  That's what I saw happening."  (Emphasis
supplied.)

                    *    *    *    *    *

    THE COURT:  (AER 251-252)  ...  And what was
occurring was that things were very vague when Mr. Lum
first started to testify.  He said -- well, first of
all, the pronouns were very vague.  "They" said this
and "they" gave their word.  So who "they" word was one
issue.  And what was the word that had allegedly been
given?  And so you heard Mr. Bracco keep asking him so
what was the promise?  What was it?  And I chimed in
and asked what exactly did Mr. Lee Loy tell you that
Mr. Bracco had said?  <u>And I think upon being challenged
Mr. Lum began to frame things</u>, and they became framed
in a way that was different from what was in the
declarations.  <u>A much more extreme promise, a much more
vigorous promise.  It became a guaranty.  And that's
what I saw happening before my very eyes</u>.  (Emphasis
supplied.)

                    *    *    *    *    *

    THE COURT:  (AER 259-260)  ...  I will deny the
motion to withdraw the guilty plea on a number of
grounds.  First, <u>I find that Mr. Lum has misrepresented
Mr. Lee Loy's advice in testimony that Mr. Lum provided
today</u>.  He says that he was guaranteed a motion for
downward departure; that Mr. Lee Loy said that
Mr. Bracco had promised that Mr. Lum would get a motion
for downward departure based on substantial assistance;

                         15

that Mr. Lee Loy had coached him to tell the judge that everything was fine, even though the judge was saying, "You have no guarantees." <u>And, as I said earlier, I think some of these things popped into Mr. Lum's head as he was on the stand</u>.

Actually, his declaration was much more modest. Although, I will say that the credibility of the statements in the declaration and the supplemental declaration are diminished in my view, <u>having seen that Mr. Lum is lacking in credibility on the stand</u>.

But coming into this hearing, of course, I hadn't seen Mr. Lum as I have today, and in the declaration Mr. Lum said that he had been told by Mr. Lee Loy that Judge Kurren would tell him that he was facing a mandatory minimum of 20 years, but don't worry about that because you're going to get a motion for downward departure; so you won't get 20 years. <u>At this hearing that changed into Mr. Lee Loy coached me to tell the judge there had been no other promises made to me</u>. That's not in the declaration, but that's what came out today. <u>So I just saw the story expanding and expanding. So, one, I did not believe Mr. Lum on the stand</u>, ..." (Emphasis supplied.)

\* \* \* \* \*

Judge Mollway made an unequivocal credibility choice which is amply supported by the record. There does not exist any basis in this record to now disturb Judge Mollway's credibility choice on appeal.

5. **Judge Mollway Appropriately Employed the "Fair and Just Reason" Standard**

Appellant Lum additionally argues that Judge Mollway used a stricter standard than the applicable "fair and just reason" standard, in ruling on his plea withdrawal motion (Lum's Brief at 30-33). Lum's claim in this regard is plainly wrong.

Judge Mollway well understood, and expressly acknowledged on the hearing record, that the Rule 11(d)(2)(B) "fair and just reason" standard applied (AER 262).[3]  She denied Lum's motion on this basis.  Judge Mollway ruled that Lum -- for a number of grounds (AER 259) -- failed to demonstrate such a fair and just basis.  Chief among these grounds was Lum's utter lack of credibility, which significantly contributed to Judge Mollway's finding that no promise of a departure had been made to Lum by Mr. Lee Loy (AER 263).  Judge Mollway was entitled to consider Lum's sworn averments, made at the Rule 11 colloquy, in assessing Lum's credibility.  See e.g., United States v. Nostratis, supra, 321 F.3d 1206, 1208-1210; United States v. Rios-Ortiz, supra, 830 F.2d 1067, 1070.

Lum's citation to this Court's decision in United States v. Davis, 428 F.3d 802 (9th Cir. 2005), is unavailing.  Davis is readily distinguishable because, unlike Judge Mollway's findings in Lum's case, the District Judge in Davis made factual findings in favor of the defense position (i.e., defense counsel grossly mischaracterized the possible sentence).

In sharp contrast, Judge Mollway's factual findings were contrary to the defense position.  Judge Mollway made the

_____

[3]  The pleadings below, including Lum's legal memorandum in support of his motion to withdraw his guilty plea (AER 71-75), and, the Government's supplemental responsive pleading (AER 102-108), were in agreement that the "fair and just reason" standard applied (AER 73, 105).

17

specific finding that <u>no</u> mischaracterization as to Lum's possible sentence was made by Mr. Lee Loy (AER 263) -- "I'm finding that there was no incorrect advice ... ."  Consequently, Lum's situation on this appeal is much more akin to the circumstances of <u>United States v. Signori</u>, 844 F.2d 635, 638 (9th Cir. 1988) (Judge found that defense counsel fully advised defendant of consequences of guilty plea), wherein this Court affirmed the district court's denial of a plea withdrawal motion.

Judge Mollway also found that even if such a misrepresentation had been made by Mr. Lee Loy, that under the rationale of this Court's <u>Rubalcaba</u> opinion (<u>United States v. Rubalcaba</u>, 811 F.2d 491 (9th Cir.), <u>cert. denied</u>, 484 U.S. 832 (1987)), the misrepresentation would have been cured by Magistrate Judge Kurren's subsequent and particularized advisement to Lum at the guilty plea hearing, that no such promise existed (AER 263).  However, Judge Mollway's comments about <u>Rubalcaba</u> were a second (and alternative) ground as to why she believed that Appellant Lum failed to demonstrate a "fair and just reason" to permit withdrawal of his guilty plea.

Given Judge Mollway's credibility findings -- and a hearing record which highlights Lum's mendacity -- it is plain that Lum failed to meet his burden to demonstrate a "fair and just reason" to permit withdrawal of his guilty plea.

18

## VII.  CONCLUSION

For the reasons stated herein, Lum's conviction should be, in all respects, affirmed.

DATED: _April 27th_ , 2006, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By _____
LOUIS A. BRACCO
Assistant U.S. Attorney

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

19

<u>CERTIFICATION OF RELATED CASES</u>

Pursuant to Rule 28-2.6, Rules of the United States Court of Appeals for the Ninth Circuit, Appellee United States of America, by and through its undersigned attorney, hereby certifies that it is unaware of any other pending cases related to this appeal.

DATED: April 27th          , 2006, at Honolulu, Hawaii.

By _____

LOUIS A. BRACCO
Assistant U.S. Attorney

**Certificate of Compliance Pursuant to Fed. R.App. 32(a)(7)(C)and Circuit Rule 32-1 for Case Number 05-10835**

(see next page)    Form Must Be Signed By Attorney or Unrepresented Litigant *And Attached to the Back of Each Copy of the Brief*

**I certify that:  (check appropriate options(s))**

__X__ 1.    Pursuant to Fed.R.App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is

☐    Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words, reply briefs must not exceed 7,000 words),

**or is**

☑    Monospaced, has 10.5 or fewer characters per inch and contains __4,190__ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

____ 2.    The attached brief is **not** subject to the type-volume limitations of Fed.R.App.P. 32(a)(7)(B) because

☐    This brief complies with Fed.R.App. 32(a)(1)(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages;

☐    This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

☐    Proportionately spaced, has a typeface of 14 points or more and contains _____ words,
**or is**
☐    Monospaced, has 10.5 or fewer characters per inch and contains _____ pages or _____ words or _____ lines of text.

____ 3.    *Briefs in Capital Cases*

☐    This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 **and is**

☐    Proportionately spaced, has a typeface of 14 points or more and contains_____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words)

**or is**

☐    Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).



___4. *Amicus Briefs*

☐  Pursuant to Fed.R.App.P. 29(d) and 9th Cir.R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less,

**or is**

☐  Monospaced, has 10.5 or fewer characters per inch and contains not more than either 7,000 words or 650 lines of text,

**or is**

☐  Not subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed.R.App.P. 32(a)(1)(5).

April 27, 2006
Date

_____
Signature of Attorney or
Unrepresented Litigant

CERTIFICATE OF SERVICE

I hereby certify that two copies of the Brief were mailed on April 28, 2006 to the following person:

Cynthia Kagiwada, Esq.
P.O. Box 368
Kaneohe, HI    96744

Attorney for Defendant-Appellant
ROBERT LUM

DATED:  April 28, 2006, at Honolulu, Hawaii.